JOHNSON v DePREE COMPANY

Docket Nos. 71553—71555. Submitted November 9, 1983, at Grand
Rapids.—Decided May 15, 1984. Leave to appeal applied for.

William D. Johnson, an employee of DePree Company, was
injured in an explosion in 1966. Treatment for the injuries
resulted in his deafness. He returned to work in 1967 and over
the next few years experienced increasingly severe communica-
tion problems which led to frustration and depression. Ulti-
mately, in 1976, he quit his job, informing his employer by
letter that his reason for leaving was work-related and because
of his health. He subsequently filed a claim for workers' com-
pensation benefits. The hearing officer found that plaintiff's
disability was caused by emotional problems resulting from the
1966 injury and ordered benefits paid by Zurich Insurance
Company, which was the employer's insurer in 1966. He also
found no "aggravational injury" in 1976 and that Travelers
Insurance Company, which was the insurer at that time, was
not liable for payment of benefits. The Workers' Compensation
Appeal Board modified that holding, finding a 1976 date of
injury and holding that Travelers was liable for payment of
benefits. The WCAB also held that Travelers was entitled to
credit on its liability for benefits against the proceeds of a
settlement plaintiff had reached in 1969 in an action he had
brought against a third-party tortfeasor. Plaintiff and Zurich
each appealed from the determination that Travelers was
entitled to credit against the settlement proceeds, and Travel-
ers and DePree appealed from the determination that plaintiff
was entitled to benefits and that Travelers was liable for
payment. The Court of Appeals denied leave to appeal, and the
Supreme Court, in lieu of granting leave to appeal, remanded
the cause to the Court of Appeals for consideration of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation §§ 442 et seq., 553, 556.

[2] 82 Am Jur 2d, Workmen's Compensation §§ 333 et seq., 547.

[3] 82 Am Jur 2d, Workmen's Compensation § 429 et seq.

[4] 81 Am Jur 2d, Workmen's Compensation § 4.

82 Am Jur 2d, Workmen's Compensation § 338 et seq.

[5] 82 Am Jur 2d, Workmen's Compensation § 579.

consolidated appeals as on leave granted. 417 Mich 1002 (1983).
*Held:*

1. The WCAB's finding that the employer was given sufficient notice of the work-related nature of plaintiff's claim to avoid a statute of limitations defense was supported by the evidence.

2. Similarly, the finding of the WCAB that there was an emotional disability in 1976 and that plaintiff's present disability did not result from aggravation of the 1966 injury, thus making Travelers liable for payment of benefits, was supported by evidence on the record.

3. The WCAB erred in allowing Travelers to claim credit against the settlement with the third party. That settlement was relative to the 1966 injury, while Travelers' liability is based upon the 1976 disability.

4. The WCAB properly ordered interest on the entire amount of unpaid, but due, benefits at the rate of 12% per annum.

Affirmed, except as to Travelers' entitlement to credit against the third-party settlement, which finding is reversed.

1. WORKERS' COMPENSATION — NOTICE OF INJURY — QUESTION OF FACT.

The question of whether an employee has given his employer sufficient notice of the work-related nature of his injury or illness to require the reporting of the injury to the Bureau of Workers' Disability Compensation is one of fact for decision by the Workers' Compensation Appeal Board, and the board's findings are binding on the courts if there is any evidentiary support for them.

2. WORKERS' COMPENSATION — AGGRAVATION OF INJURY — QUESTION OF FACT.

The question of whether an injured employee has suffered a subsequent work-related aggravation of the original injury is one of fact for the Workers' Compensation Appeal Board, whose findings of fact, in the absence of fraud, are conclusive if supported by any evidence.

3. WORKERS' COMPENSATION — REIMBURSEMENT OF BENEFITS — ACTION AGAINST THIRD PARTY.

A workers' compensation insurer which has paid benefits is entitled to reimbursement from the proceeds of an action brought by the injured employee against a third party only where the injury for which workers' compensation is payable was caused by and created liability in the third party (MCL 418.827[5]; MSA 17.237[827][5]).

4. WORKERS' COMPENSATION — NONECONOMIC DAMAGES.

   A workers' compensation insurer is not liable for payment of
   noneconomic damages.

5. WORKERS' COMPENSATION — INTEREST.

   Interest on workers' compensation awards entered after January
   1, 1982, is to be paid at the rate of 12% per annum from the
   date each payment was due (MCL 418.801[5]; MSA
   17.237[801][5]).

*McCroskey, Feldman, Cochrane & Brock* (by
*Darryl R. Cochrane),* for plaintiff.

*Baxter & Hammond* (by *James R. Piggush),* for
DePree Company and Zurich Insurance Company.

*Kluczynski, Girtz & Vogelzang* (by *Duncan A.
McMillan* and *Gregory J. Rapp),* for DePree Company
and Travelers Insurance Company.

Before: ALLEN, P.J., and R. M. MAHER and R. H.
BELL,* JJ.

PER CURIAM. This is a consolidated appeal before
this Court on order of the Michigan Supreme
Court to consider this case as on leave granted,
arising out of a claim for workers' compensation
disability benefits. 417 Mich 1002 (1983).

On March 10, 1966, plaintiff was severely
burned in an explosion involving a tank truck
while he was employed by DePree Company. As a
result of this incident, plaintiff spent four months
in the Burn Unit at University Hospital in Ann
Arbor. Treatment for the burns resulted in his
deafness.

In May, 1967, plaintiff returned to work. He had
difficulties with pain, headaches, ringing in his
ears, and communicating with people. The communi-
cation problem caused him to become "frus-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

trated and depressed". Sometime in 1972, plaintiff was transferred from assistant lab director to lab technician. In March, 1972, plaintiff was discharged; at this time he was not feeling well. Soon thereafter, he was reinstated, but was told that he could not "be sick anymore". In April, 1972, plaintiff was admitted to a hospital and a psychiatric evaluation was conducted. Plaintiff stated that difficulties with communicating made his job very hard, and that he was continually confused, frustrated, and depressed. On May 24, 1976, plaintiff quit his job. Plaintiff attributed his decision to leave DePree to increasingly severe communication problems, constant roaring sounds in his head, headaches, and nervousness aggravated by contact with people. He also complained of company harassment. In August, 1977, plaintiff filed a claim for workers' compensation disability benefits.

The hearing officer determined that plaintiff was totally and permanently disabled by emotional problems arising as a result of the March 10, 1966, injury. The hearing officer found no "aggravational injury on 5/24/76" and determined that Zurich Insurance Company, which insured DePree in March, 1966, was on risk and that Travelers Insurance Company, which insured DePree after Zurich, was not on risk.

The Workers' Compensation Appeal Board (WCAB), modified the decision of the hearing officer. The WCAB found a 1976 injury date, with no total and permanent disability, and that Travelers was on risk to pay plaintiff general disability benefits.

In 1969, plaintiff's action against the company owning the tank truck involved in the 1966 explosion was settled for $150,000. After reimbursing

Zurich for workers' compensation benefits and paying attorney fees and costs plaintiff netted approximately $100,000. The WCAB concluded that, pursuant to MCL 418.827(5); MSA 17.237(827)(5), Travelers was entitled to claim as a credit against workers' compensation benefits due the net amount which plaintiff received from the third-party settlement.

In Docket No. 71553, plaintiff appeals the determination that Travelers is entitled to claim a credit against the third-party settlement, as does Zurich in Docket No. 71554.[1] In Docket No. 71555, Travelers appeals the determination that plaintiff is entitled to workers' compensation disability benefits, related issues going to the amount of payments to which plaintiff is entitled, and the determination that, in the event plaintiff is deemed entitled to benefits, it is the insurer on risk rather than Zurich. Although we will address each of the issues raised, rather than address them by docket number, we will first consider whether plaintiff is entitled to benefits, then the issue of which insurer is liable for benefits, and finally the questions going to the amount of payments to which plaintiff is entitled.

# I

## PLAINTIFF'S ENTITLEMENT TO WORKERS' COMPENSATION DISABILITY BENEFITS

Travelers asserts that the WCAB erred in

---

[1] Even if it is now excused from any obligation to pay plaintiff weekly compensation benefits, Zurich may, at some point, be called upon to provide medical care on account of the burns suffered by plaintiff in 1966. See MCL 418.315; MSA 17.237(315). Zurich is worried that, if Travelers is allowed to claim a credit on the third-party settlement arising out of the 1966 incident, it may find that that settlement has been completely exhausted by the credit extended to Travelers.

awarding plaintiff benefits for emotional disability because plaintiff did not provide notice to DePree, his employer, sufficient to inform it that he claimed to suffer a work-related injury. Although defendant terminated his employment in May, 1976, he did not claim workers' compensation benefits until August, 1977. As it applied in 1976, MCL 418.381(1); MSA 17.237(381)(1) provided in pertinent part:

"No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury has been given to the employer within 3 months after the happening thereof and unless the claim for compensation with respect to the injury, which claim may be either oral or in writing, has been made within 6 months after the occurrence of the same * * *. In a case in which the employer has been given notice of the happening of the injury or has notice or knowledge of the happening of the accident within 3 months after the happening of the same, and fails, neglects or refuses to report the injury to the bureau as required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee or his dependents, or in favor of the employer or his insurer, until a report of the injury has been filed with the bureau."

Plaintiff's letter of resignation of May 24, 1976, stated that "for reasons of health I am terminating my employment with the DePree Company". By subsequent letter of June 2, 1976, plaintiff informed DePree that "my reason for termination of employment is work related". The WCAB found that these letters, taken together with internal company documents, including job evaluations which described, under the heading of "stability", plaintiff's tendency to "blow up" and become irritable with co-workers, were sufficient to place

DePree on notice of the nature of his work-related claim. Fred Sackett, DePree's personnel director, acknowledged that he did not attempt to ascertain the basis of plaintiff's claim that his resignation was work-related.

The question of notice is one of fact for the WCAB, and its findings are binding on the courts if there is any evidentiary support for them. *Smith v Kelsey-Hayes Co (After Remand),* 404 Mich 70, 73; 273 NW2d 1 (1978). Although a close question, the WCAB's conclusion of sufficient notice is supportable on this record.

We believe that Travelers' reliance upon *Nicholson v Lansing Bd of Ed,* 127 Mich App 551; 339 NW2d 482 (1983), is misplaced. In *Nicholson,* this Court held that mere knowledge by an employer of an employee's absence from work as a consequence of sickness or injury is not sufficient notice to require reporting the injury to the workers' compensation bureau. Here, however, DePree received two letters from plaintiff within a few days, the first of which indicated he was resigning for work-related reasons and the second of which claimed the resignation to be for reasons of health. Moreover, DePree's own files showed that plaintiff had manifested emotional problems at work. The additional facts present in this case distinguish it from *Nicholson* and allowed the WCAB to find sufficient notice under MCL 418.381; MSA 17.237(381) so as to preclude the statute of limitations defense.

## II

### DETERMINING WHETHER TRAVELERS OR ZURICH IS ON RISK FOR WORKERS' COMPENSATION BENEFITS

Travelers also contends that the evidence clearly reveals that there was no 1976 injury and that

plaintiff's emotional injuries, if any, are the direct result of the 1966 explosion and injury. If, in fact, the first injury was not aggravated by subsequent work incidents but, rather, plaintiff's condition resulted from progressive deterioration arising out of the first injury which ultimately led to disability, then Zurich, rather than Travelers, is on risk for providing plaintiff benefits for this disability. See *Thick v Lapeer Metal Products Co,* 103 Mich App 491, 495-496; 302 NW2d 902 (1981). Whether there was work-related aggravation of the original injury is a question of fact for the WCAB. *Thick, supra.* In the absence of fraud, the WCAB's findings of fact are conclusive if there is any evidence to support them. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978).

The hearing officer's attribution of plaintiff's emotional disability to the 1966 incident, without subsequent work aggravation, was a fair conclusion to draw from the evidence. At the same time, we certainly cannot say that the WCAB's finding of a 1976 emotional disability, arising out of "perceived harassment and an unfriendly work environment", in combination with the residuals of the 1966 incident, is unsupported by the evidence.

Psychiatrist Forrest R. Van Dam testified that plaintiff's condition arose from repeated frustrations that plaintiff perceived in his workplace and which were not the result of any natural progression of the 1966 injury. He further pointed to conflicts with co-workers which contributed to plaintiff's poor self-image, rendering plaintiff unable to work. Similarly, psychiatrist Robert Troske attributed plaintiff's condition to mounting frustration over changes in the workplace and, ultimately, his inability to adapt to these changes.

Travelers, noting that plaintiff's communication

problems were initially created by the 1966 explosion which resulted in his deafness, contends that it was solely the progressive deterioration of his ability to communicate, not aggravated by his subsequent work, which resulted in the disability. Travelers further notes that plaintiff, himself, attributed his work difficulties to his deafness and his inability to communicate, rather the to the job itself, and asserts that this proves that the disability was unrelated to the job. However, we are persuaded that the WCAB's finding is supportable by Zurich's counsel's response to Travelers' syllogism. Zurich's counsel argues in his brief on appeal:

"[Plaintiff's] forthright statements that the problems he had on the job were the cause of his subsequent difficulties, are transferred into statements that his inability to communicate, not his job requirements, were his problem. In the same way, a worker might say his problem is his back, without thereby excusing the lifting which gave rise to his back problem. We would be rather surprised to hear an individual suffering from a work-related back problem say, at time of trial, that his problem was "150 pounds". He is more likely to say that his problem is his back. Or, his difficulty in communicating. That hardly excuses the [situation] which brought on this back or the psychiatric problem. If you ask the questions concerning how his back got that way, or how his condition got to be too much, then you get the answers about the precipitating incidents and situations."

The record contains evidence which would allow the WCAB to conclude that post-1966 precipitating incidents and situations resulted in the emotional disability and that this disability did not simply represent the progressive deterioration of plaintiff's deafness.

Travelers also argues that, even if plaintiff did sustain a work-related emotional disability in 1976, the symptoms and residuals from any post-1966 aggravation no longer exist and his continuing disability, if any, flows directly from the 1966 injury. In so arguing, Travelers relies on *Carter v General Motors Corp,* 361 Mich 577; 106 NW2d 105 (1960). There, in the leading case in the nation on this subject, the Michigan Supreme Court held that plaintiff's emotional breakdown was compensable. The plaintiff in *Carter* suffered from a pre-existing schizophrenic condition which, as a consequence of the employment, became symptomatic and resulted in a disability. However, the Court reversed the award of continuing benefits, emphasizing that plaintiff's expert had testified that, although plaintiff should not return to production work, this was not because he was currently disabled by schizophrenia but, rather, because his schizophrenia rendered him susceptible to future mental breakdowns if he were subjected to the pressures of production work. The Court noted that this susceptibility to mental breakdowns was the very reason why plaintiff should not have been employed in production work in the first place. In other words, although the work environment caused the plaintiff in *Carter* to become symptomatic, his underlying psychopathology was not changed by the workplace.

Travelers points to expert testimony in this case which shows that the psychiatrists agree that, since terminating his employment with DePree, any work-related frustrations no longer continue to play a role in his mental disease process. Moreover, plaintiff's expert, Dr. Forrest Van Dam, testified that when plaintiff was examined in September, 1978, plaintiff displayed no symptoms of ongo-

ing neurosis or psychotic disorder. Dr. Van Dam further testified, however, that plaintiff should not return to a job where he faces communication difficulties. Similarly, psychiatrist Robert Troske and psychologist Don L. Van Ostenberg testified that plaintiff was now free of psychopathology and the only reason why he should not work would be to accommodate his deafness. Given this testimony, Travelers argues that plaintiff's deafness, not any post-1966 explosion aggravations in the workplace, is the basis of any current disability and that Zurich is thus liable for benefits.

The crucial distinction between this case and *Carter* is that here the WCAB found (and this finding is supported by the record) that plaintiff's underlying psychological condition actually changed as a consequence of the conditions in the workplace subsequent to his return to DePree after the 1966 injury. Although plaintiff is now relatively asymptomatic, his underlying psychological condition, altered by the combination of the 1966 injury *and* the subsequent difficulties in the workplace, have rendered him hostile and aggressive toward placement into an environment which he cannot control, that is, the environment of almost any workplace. The subsequent emotional traumas of the workplace have also left plaintiff with a lack of motivation and a largely passive personality. Unlike *Carter,* where the plaintiff's underlying psychological condition, itself, did not deteriorate, here, as a consequence of post-1966 injury incidents in the workplace, plaintiff's underlying mental state has deteriorated for the worse. Here, the WCAB found that the contraindication of work arose directly out of the workplace, while in *Carter* there was a contraindication for a particular type of work only and this contraindication existed prior to employment of any variety.

III

## Issues Relating to the Amount of Workers' Compensation Payments to Which Plaintiff Is Entitled

Zurich and plaintiff argue that the WCAB erred in allowing Travelers to claim credits on its liability against plaintiff's third-party settlement arising out of the 1966 explosion and injury. They contend that, pursuant to MCL 418.827(5); MSA 17.237(827)(5), Travelers is not entitled to any credit for the third-party settlement because this settlement was paid on account of the 1966 injury, not the 1976 injury which the WCAB found resulted in disability.

In *Pitoniak v Borman's, Inc,* 104 Mich App 718, 730; 305 NW2d 305 (1981), relied upon by plaintiff and Zurich, this Court held that "reimbursement is only available where the injury for which compensation is payable under the act was caused by and creates liability in a third party". In *Griggs v Budd Co,* 90 Mich App 649; 282 NW2d 431 (1979), relied upon by Travelers, this Court held merely that where a subsequent non-work accident aggravates and intensifies a work-related disability, to the extent that the employer or its insurer must pay compensation for this aggravation, reimbursement from a third-party tortfeasor is not precluded because the third-party's liability did not arise out of a work-related incident.

We conclude that under either *Pitoniak* or *Griggs* it was error to allow Travelers to claim credits against the third-party settlement. The WCAB's finding that there was a new work-related injury which resulted in disability in 1976, as opposed to the hearing officer's finding that plaintiff's disability merely represented the progressive

deterioration of the 1966 injury, not aggravated by post-1966 workplace conditions, precludes granting Travelers credits against the third-party settlement. Both *Pitoniak* and *Griggs* are premised on the view that the right to reimbursement under MCL 418.827; MSA 17.237(827) follows liability. See, also, *Downie v Kent Products,* 122 Mich App 722, 740; 333 NW2d 528 (1983). Travelers is not, and was not, liable for the consequences of the 1966 injury; Zurich was and paid benefits accordingly. Travelers is responsible only for the consequences of the new 1976 injury, while the third-party settlement was to compensate plaintiff for the damages caused by the 1966 incident. Clearly, no portion of the settlement represented compensation for lost wages as a consequence of emotional or psychological disability because, at the time of this settlement, plaintiff was working and had not suffered such work loss.[2] To the extent that the settlement represented compensation for more generalized psychic injuries, such as mental anguish, that settlement compensated for plaintiff's noneconomic damages and, because a workers' compensation insurer is not liable for payment of noneconomic damages, Travelers is not entitled to claim credits against this portion of the settlement. See *Logan v Edward C Levy Co,* 99 Mich App 356, 360-362; 297 NW2d 664 (1980). That portion of the WCAB award allowing Travelers a credit against the third-party settlement must be struck. We so order.

Travelers also contends that the WCAB erred in awarding interest on the entire amount of unpaid, but due, workers' compensation benefits at 12% per annum, instead of awarding this rate of inter-

---

[2] A portion of this settlement did compensate plaintiff for work loss while he was recuperating from the physical effects which the explosion caused to his person.

est only on those payments due, but unpaid, after January 1, 1982, the effective date of the amendment of MCL 418.801; MSA 27.237(801), adding subsection 5 which provides for the 12% rate of interest. This argument was recently rejected by the Supreme Court in *Selk v Detroit Plastic Products,* 419 Mich 1, 15; 345 NW2d 184 (1984).

Docket No. 71555 (Travelers' liability and interest on unpaid, but due, benefits after January 1, 1982) is affirmed; Docket Nos. 71553 and 71554 (Travelers' entitlement to credits against the third-party settlement) are reversed, and the WCAB order is modified to strike the provision in that order allowing Travelers to claim credits on the third-party settlement. Plaintiff and Zurich may tax costs.